**WATKINS et al. v. WHITIS et al.**

Court of Appeals of Kentucky.

April 30, 1954.

William A. Hamm, Murray L. Brown, Brown & Bird, Boyd F. Taylor, Jr., London, for appellants.

William J. Weaver, J. Milton Luker, London, for appellees.

SIMS, Chief Justice.

This action was brought to recover damages arising out of an alleged "false scheme" of the appellants, whereby appellees had been induced to render services to the principal appellant, Lucy Mack Watkins, upon her representations which led appellees to believe they would be given Miss Watkins' farm at her death. The action was tried before a jury and it returned a verdict of $12,000 for appellees, a substantial portion of which must have been for the value of services rendered. Both parties have filed voluminous briefs which go into the extensive evidence in detail, but it is difficult to determine the precise theory upon which this action was practiced.

The pertinent facts are as follows: Appellant, Lucy Mack Watkins, an unmarried woman now in her seventies, lived on a farm in which she had been deeded a life estate by her father. It was the old home place, and her brother, the other appellant, had a remainder interest therein. He lived on another farm not far distant. About

1930, when appellee, Minerva Whitis, was 11 years of age and an orphan, she came to live with Lucy and continued to live with her until 1952. Lucy had been a cripple from birth and Minerva assisted her in general housekeeping, and rendered some special assistance because of the crippled condition. There is a conflict of evidence as to the extent of Lucy's disability.

In 1937 Minerva married and her husband, the other appellee, came to live on the farm. As a result of this union Minerva and her husband had four children of whom three are living, and she and her husband have lived on the farm continuously and have raised their family there.

Lucy and appellees with their family lived together congenially on the farm until 1952 when a difference developed because Lucy and her brother sold a small part of the farm. During this period both appellees and Lucy contributed to the running of the household. Appellees paid no rent nor did they furnish any money to Lucy. Minerva's husband farmed the land but the only direct payment he made to Lucy was 1/3 of the income from a small tobacco crop for a period of about three years. Hogs and chickens were raised on the farm, stock was kept, crops were harvested, and the living realized from the farm was shared in by all of the parties. Minerva's husband, until about 1947 when he took a job in town, generally attended to the farm, building fences, preparing outbuildings, cultivating the land and performing the ordinary tasks incident to living on the land. He paid for a number of items but until he obtained his job in town there is no indication he had any money or source of income other than the produce of the farm. Lucy herself paid many expenses incident to the upkeep of the property and other items which went into the cost of living.

Apparently appellees' general theory of recovery is that they were induced to live on the farm and take care of Lucy upon her agreement or representation that they would be rewarded at her death. Their petition is framed in fraud and is based upon certain alleged representations made by Lucy in 1937 and by her brother sometime between 1939 and 1941. In spite of a great mass of evidence introduced in the case, there is practically no proof of the essential elements of fraud. Appellees seem to recognize this because in their brief on this appeal they state the suit is essentially one to recover damages for breach of an oral contract to perform services. The trial court seems to have accepted this view because, while the instructions referred to fraudulent representations, the measure of recovery was principally based upon the fair and reasonable value of the services rendered.

Appellants raise several questions with respect to the nature of the action, the failure to require an election, limitations, the statute of frauds, and the failure of proof to conform to the pleadings. We will not discuss these questions because in our opinion appellees failed to prove a case against either appellant on any ground.

As above mentioned, there was no proof of fraud on the part of Lucy's brother. His only appearance on the stage of this controversy appears to have been sometime between 1939 and 1941. He had nothing whatever to do with the alleged inducement of Minerva's husband to come and live on the farm in 1937. Minerva testified that about 1939 or 1940 the two appellants:

"Came to town and they came back and that same day or a little later Lucy told us they went and fixed everything so that me and Cy could get everything she had."

Apparently describing this same occasion, Minerva's husband testified:

"It was about 1941 or '42, possibly, the best I remember they came to town, the three did, and when they came back, not immediately, but a little time after that Miss Watkins said that she had everything she had made to us on that trip. Chap (the appellant) told us the same thing and from time to time they have both repeated the very same thing and a lot of time when Lucy would be sick and not feeling so

well they would especially call our attention to that phrase where everything was ours and that we wouldn't have to wait on her too much longer."

It is plainly evident that with respect to Chap, Lucy's brother, the alleged representations made by him did not constitute an agreement upon his part to be personally responsible for anything. If it could be construed as any sort of agreement, there was no consideration for it. With respect to estoppel, there is no showing he was aware of any agreement between appellees and Lucy, if there was one, and appellees could not have relied on his statement because they did not know he had any interest in the farm. We can find nothing in the evidence that would justify a judgment against him for the services rendered his sister. Even if it were possible for this case to be considered as one for unjust enrichment against him, there was no proper proof of enhancement in value of the farm by virtue of alleged improvements made thereon by appellees. A judgment should have been directed for this appellant, Chap.

With respect to Lucy, we can likewise find no cause of action proven against her. The evidence with respect to any agreements or representations made by her was that at her death appellees "would get everything she had". This of course could not include the farm because she had only a life estate in it. There is no proof she represented she owned the farm in fee or that she would leave appellees any land.

■ Assuming, without deciding, that there was sufficient evidence to find an agreement on the part of Lucy to leave appellees "everything she had" at her death, it is obvious that this action is premature because the event upon which the agreement was allegedly based has not occurred. Lucy herself testified that she had intended to leave some of her personal belongings to Minerva. The nature of the agreement, if there was one (which Lucy denies), is rather indefinite, but if it existed, it has not yet been breached. Therefore, a verdict should have been directed for Lucy.

■ We may say in passing that because of the many shifting theories of liability presented by the pleading and proof on behalf of appellees, and the great amount of testimony introduced in the trial of this action, it would be almost impossible for a trial judge, without the study it has been necessary for us to give the case to properly determine the relative rights of the parties. Certainly, the case could not be submitted intelligibly to a jury. However, we believe that appellees failed to prove a cause of action against either appellant.

The judgment is reversed for proceedings consistent with this opinion.